IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WILBERT MILLER, JR.,     ) | |
|                                ) | |
|     Plaintiff,        ) | |
|                                ) | |
| v.                              ) | 2:04-CV-983-VEH |
|                                ) | |
| MIKE HALE, as Sheriff    ) | |
| of Jefferson County, Alabama,    ) | |
|                                ) | |
|     Defendant.      ) | |

## OPINION

This Court has before it the July 29, 2005, motion of Defendant Mike Hale, Sheriff of Jefferson County, Alabama (hereinafter "Defendant") for summary judgment as to Plaintiff Wilbert Miller's (hereinafter "Plaintiff") race discrimination claim (doc. 29). For the reasons set forth below, the Defendant's motion for summary judgment is due to be **GRANTED** as to Plaintiff's racial employment discrimination claim based on disparate treatment in job transfers under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended by the Civil Rights Act of 1991.

### I. Procedural History

This is a civil action, filed originally by Plaintiffs Anthony Pippens, Byron K. Deramus, Wilbert Miller, Jr., James E. Perry, Felicia T. Rucker, and Curtis Williams, against the Defendants, the Jefferson County Sheriff's Department and

Mike Hale in his individual and official capacities as the Sheriff of Jefferson County. (Compl. ¶14-16). The initial Complaint in this case was filed on December 19, 2003, and given case number CV-03-BE-3352-S. (doc. 2). On May 13, 2004, Judge Lynwood Smith severed the action into six individual cases.[1] The present action is brought by Plaintiff Wilbert, Miller Jr.

The Amended Complaint, filed on February 25, 2004, adds as Defendants the Jefferson County Commission and Jefferson County, Alabama. (doc. 4). The Amended Complaint also alleges four Counts against the Defendants for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (Count I); violation of 42 U.S.C. §§ 1981 and 1981(a) through section 1983 (Count II); violation of the Plaintiff's rights to equal protection (Count III); and violation of 42 U.S.C. § 1981 and 42 U.S.C. § 1983 for retaliation in violation of Plaintiff's First Amendment right to political association (Count IV).[2] (doc. 4).

---

[1] The actions of Plaintiffs Pippens, Rucker, and Williams are the subject of separate pending summary judgment motions before this Court. The actions of Plaintiffs Deramus and Perry were dismissed with prejudice by Judge Blackburn on August 2, 2005, and October 24, 2005, respectively.

[2] This Court granted Plaintiff's motion to dismiss all claims against Defendant Mike Hale in his individual capacity. (doc. 23). In a memorandum opinion published on October 28, 2004, (doc. 24), this Court dismissed with prejudice (1) all claims against Jefferson County; (2) all claims against the Jefferson County Commission; (3) Plaintiff's claims against Defendant Hale in his official capacity for violations of 42 U.S.C. § 1981 and § 1981(a) through 42 U.S.C. § 1983 (Count II); (4) Plaintiff's claims against Defendant Hale in his official capacity for violation of Plaintiff's rights to Equal Protection (Count III); and (5) Plaintiff's claims against Defendant Hale in his official capacity for violation of 42 U.S.C. § 1981 and §1983 by retaliation in violation of Plaintiff's First Amendment rights to political association (Count IV).
This Court denied Defendant's motion to dismiss as to Plaintiff's Title VII action against Defendant Hale in his official capacity. Therefore, Plaintiff's Title VII claim is the only claim that is the subject of this present action.

On July 29, 2005, Defendant filed a motion for summary judgment with this Court asserting (1) since Plaintiff has not alleged direct evidence showing that Sheriff Hale discriminated against him, Plaintiff must prove his case through circumstantial evidence, using the familiar burden-shifting framework established in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973) (Def's Mot. for Sum. Judg. 7-8).[3]

The Defendant submitted evidence[4] in support of its motion for summary judgment and filed a supporting brief on July 29, 2005.[5]

## II. Standard of Review

### A. Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the

---

[3] This Court originally denied the Defendant's motion for summary judgment on October 12, 2005. (doc. 32). The Defendant filed a motion to reinstate the Defendant's motion for summary judgement on February 6, 2006. (doc. 33). This Court granted the Defendant's motion to reinstate the Defendant's motion for summary judgment motion on February 6, 2006. (doc. 34).

[4] Plaintiff's Answer to Defendant's First Set of Interrogatories and Requests for Production; Affidavit of Chief Deputy Carl Johnson; EEOC Charge; Notice of Right to Sue (EEOC); and the Affidavit of Mike Lindon.

[5] Defendant's motion for summary judgment was not opposed by Plaintiff.

evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23.  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once a moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 234 (quoting Fed. R. Civ. P. 56(e)).  "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

**B. Unopposed Motion for Summary Judgment**

The nonmovant has not opposed the motion for summary judgment in the instant action. However, "the district court cannot base the entry of summary judgment on the mere fact that the motion [is] unopposed, but, rather, must consider the merits of the motion." *United States v. One Piece of Real Property*, 363 F.3d 1099, 1101 (11th Cir.2004), citing *Dunlap v. Transamerica Occidental Life Ins. Co.*, 858 F.2d 629, 632 (11 th Cir. 1988) (per curiam). See also *Hibernia Nat'l Bank v. Administration Central Sociedad Antonima*, 776 F.3d 1277, 1279 (5th Cir. 1985) ("a motion for summary judgment cannot be granted simply because there is no opposition...."), citing *John v. La. (Bd. of Trustees for State Colleges & Universities),* 757 F.2d 698, 709 (5th Cir.1985). "[T]he district court's order granting summary judgment must 'indicate that the merits of the motion were addressed.'" *One Piece of Real Property*, 363 F.3d at 1102, quoting *Dunlap*, 858 F.2d at 632.

While this court is not required to examine every item of evidence before it when considering a motion for summary judgment, it must make certain that the motion is "supported by evidentiary materials." *One Piece of Real Property*, 363 F.3d at 1101. At the least, this court must consider all the evidence submitted by the movant in support of its motion. *Id.*, citing *Jeroma v. Massey*, 873 F.2d 17, 20 (1st Cir. 1989) (per curiam) ("...the district court must review the motion and the

supporting papers to determine whether they establish the absence of a genuine issue of material fact.").

The movant must demonstrate an absence of a genuine issue of material fact; if the movant fails to meet this burden, this court may deny the motion, without regard to whether the nonmovant has filed a response. *Hibernia Nat'l Bank*, 776 F.3d at 1279, citing *John*, 757 F.2d at 708.

However, if the nonmovant has not supplied the court with a response to any issue of fact, this court may receive the movant's factual account as "a prima facie showing of its entitlement to judgment." *Eversley v. Mbank Dallas*, 843 F.2d 172, 174 (5t h Cir. 1988), citing *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. V. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### III. Relevant Facts

Plaintiff began working for the Sheriff's Department in 1972 and remained employed by the Sheriff's Office until he voluntarily retired in July 2003. (Amend. Compl. ¶ 25).  In 1999, Plaintiff was assigned to the Criminal Division in Bessemer, Alabama. (Ex. 1, Pl.'s Resp. ¶ 8).  Before Defendant took office in January 2003, he met with Chief Deputy Carl Johnson, Major Allen Farley, Deputy

Chiefs Paul Costa, Jim Roberson, Jim Atkinson, and Ken Rich to discuss duty assignments for officers in the Sheriff's Office. (Ex. 2, Johnson Aff. ¶ 2).

During this meeting, Chief Deputy Carl Johnson, a black male, was assigned responsibility for the Birmingham Patrol Division. (Ex. 2, Johnson Aff. ¶ 2). Because Plaintiff and Johnson were well acquainted and Johnson was aware of Plaintiff's plans to retire soon, Johnson requested that Plaintiff work under him in the Birmingham Patrol Division. (Ex. 2, Johnson Aff. ¶ 2).

Defendant asserts, and Chief Deputy Johnson confirms in his affidavit, that when Johnson called Plaintiff to inform him that he was requesting Plaintiff to work for him in the Birmingham Patrol Division, Plaintiff did not object or indicate that the assignment would be a problem.[6] (Ex. 2, Johnson Aff. ¶2).

Defendant claims Johnson informed Plaintiff that, because he was the most senior lieutenant in the division, he could choose the shift he wanted, to which Plaintiff answered by requesting the night shift. (Ex. 2, Johnson Aff. ¶ 2) Defendant further asserts that Plaintiff made this choice because his father was ill and working the night shift would allow him to ensure that his father was able to attend his doctor's appointments during the day. (Ex. Johnson Aff. ¶ 2). Plaintiff, however, asserts that he was never asked if he desired the night shift, nor was he given the opportunity to decline the shift change. (Ex. 1, Pl.'s Resp. ¶ 10).

---

[6]   Plaintiff alleges in his unverified complaint that he received a letter informing him that he was being transferred and no reason was provided. (Amend. Compl. ¶ 26).

On June 24, 2003, Plaintiff filed a race discrimination and retaliation charge with the Equal Employment Opportunity Commission, alleging that he and other black employees were required to work less desirable shifts than white employees. (Ex. 3, EEOC Charge).  The EEOC responded to Plaintiff's filing by issuing Plaintiff a Notice of Right to Sue on October 3, 2003. (Ex. 4, Notice of Right to Sue).

In July, 2003, Plaintiff voluntarily retired from the Sheriff's Office. (Def.'s Mot. for Sum. Judg. 3).  On December 19, 2003, Plaintiff filed a second complaint alleging race discrimination and retaliation against Defendant. (Amend. Compl. ¶ 4).

## IV. Applicable Substantive Law and Analysis

Title VII provides that "[i]t shall be unlawful employment practice for an employer... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race...." 42 U.S.C. § 2000e-2(a)(1).  Further, the statute makes it an unlawful employment practice for an "employer... to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because off such individual's race...." 42 U.S.C. § 2000e-2(a)(2).

### A.     <u>Sovereign Immunity In Relation to Plaintiff's Claims for Monetary Relief</u>

The Plaintiff requests that Court issue an Order compelling the "defendant to make the Plaintiff[] whole by awarding [him] the position[] [he] would have occupied in the absence of race discrimination, back pay (plus interest), punitive damages, compensatory damages, nominal damages, liquidated damages, declaratory relief, injunctive relief, and benefits" (Pl.'s Prayer for Relief ¶ 3). The Eleventh Amendment of the United States Constitution states that: "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state. *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1524 (11th Cir. 1990). The court has further clarified this issue in *Adams v. Franklin*, 111 F.Supp. 2d 1255, 1262 (M.D. Ala. 2000)(citing *Carr v. City of Florence, Ala.*, 916 F.2d at 1524) by applying this rule to actions taken by citizens of the state against whom Plaintiff intends to bring suit.

The Supreme Court has held that an unconsenting state is immune from lawsuits brought in federal court by the state's own citizens. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). This Eleventh Amendment protection is further expanded because lawsuits against state officials in their official capacity are suits against the state when "the state is the real, substantial

party in interest."[7] *Pennhurst State School Hospital v Halderman*, 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984) (quoting *Ford Motor Co. V. Department of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed 389 (1945)).

A lawsuit filed against an Alabama sheriff is essentially a suit against state. Further, Article I, § 14 of the Alabama Constitution of 1901 states: "the state of Alabama shall never be made a defendant in any court of law or equity." *Parker v. Amerson*, 519 So. 2d 422, 443 (Ala. 1987) (citing *Montiel v. Holcombe*, 119 So. 245 (Ala. 1940)). In Alabama, the office of Sheriff is a state constitutional office, vested with the immunities of a state official as an agent or "arm of the state." *McMillian v. Monroe County*, 520 U.S. 781, 785, 117 S.Ct. 1734, 138 L.Ed.2d1 (1997)*; see also* Alabama Code § 36-22-3.

The Eleventh Amendment bars suits for monetary damages against a state by citizens of that state, unless (1) the state waives its Eleventh Amendment immunity or (2) Congress abrogates said immunity. *Adams v. Franklin*, 111 F.Supp.2d at 1262 (citing *Carr v. City of Florence*, 916 F.2d at 1524). There is a third exception to Eleventh Amendment immunity, which allows suit to be brought against a state or state agent for injunctive relief provided that the state or agent violated the Plaintiff's constitutional rights in some way by performing an official duty or

---

[7] The state is held to be the real party in interest due to the fact that the state would have to pay any award of damages. *Carr v. City of Florence* 916 F.2d at 1524.

action. *Pennhurst*, 465 U.S. at 102, 104 S.Ct. at 909 (discussing *Ex Parte Young*[8], 209 U.S. 123, 28 S.Ct. 441, 53 L.Ed. 714 (1985)). In *Ex Parte Young,* the Supreme Court held that the Eleventh Amendment did not prohibit issuance of an injunction against the Attorney General of Minnesota because an unconstitutional enactment was to be viewed as "void" and therefore does not "impart to [the officer] immunity from accountability to United States supreme authority." *Ex Parte Young*, 209 U.S. at 160, 28 S.Ct., at 454.

When applied to the case at bar, two of these exceptions can be immediately dismissed without further evaluation. There is neither any evidence in the present action nor any jurisprudence that demonstrates that the State of Alabama has waived its Eleventh Amendment immunity. Also, the third exception, which only grants injunctive relief, does not apply to the case at bar due to the fact that Defendant is invoking immunity only in relation to Plaintiff's monetary claims under Title VII as well as 42 U.S.C. § 1981 through § 1981(a) and 42 U.S.C. § 1983.[9]

The second exception applies in this case because the Eleventh Amendment does not bar Title VII actions against state officials. There is Eleventh Circuit case law that establishes that Congress has abrogated Eleventh Amendment immunity in

---

[8] In *Young*, a federal court enjoined the Attorney General of the State of Minnesota from bringing suit to enforce a state statute that allegedly violated the Fourteenth Amendment.
[9] This Court dismissed, with prejudice, Plaintiff's claims sounding under 42 U.S.C. § 1981 through 1981(a) and 42 U.S.C. § 1983. (doc. 25).

such cases. Specifically, the Eleventh Circuit has held that Eleventh Amendment immunity does not apply in civil actions invoking Title VII because Congress has clearly expressed its intention that state governments be subject to suit under Title VII. *Allen v. Alabama State Board of Education*, 816 F.2d 575 (11th Cir. 1987); *see also Cross v. State of Alabama*, 49 F.3d 1490, 1502 (11th Cir. 1995). Congress can abrogate a state's sovereign immunity only if: (a) Congress "unequivocally expressed its intent to abrogate the immunity," through "a clear legislative statement," and (b) Congress has acted "pursuant to a valid exercise of power." *In Re: Employment Discrimination Litigation Against the State of Alabama, et al., v. State of Alabama*, 198 F.3d 1305, 1317 (11th Cir. 1999)(quoting *Seminole Tribe v. Florida*, 517 U.S. 44, 55, 116 S.Ct. 1114, 1123, 134 L.Ed.2d 252 (1996). When Title VII was first enacted in 1964, its coverage was not extended to state and local governments. In 1972, the statute was amended to include "governments, governmental agencies, [and] political subdivisions."[10] *42 U.S.C. § 2000e(a)*.

In *Fitzpatrick v. Bitzer*, 427 U.S. 445, 447-48, 96 S.Ct. 2666, 2667, 49 L.Ed.2d 614 (1976), the Supreme Court concluded that, [i]n the 1972 Amendments to Title VII of the Civil Rights Act of 1964, Congress, acting under § 5 of the Fourteenth Amendment, authorized federal courts to award money damages in

---

[10]  The 1972 Amendments retained the right of an individual aggrieved by an employer's unlawful employment practice to sue on his or her own behalf, upon satisfaction of the statutory procedural prerequisites, and made clear that right was being extended to persons aggrieved by public employers. *See* 1972 Amendments, § 4(a), 86 Stat. 104, 42 U.S.C. §§2000e-5(a)-(g) (1970 ed., Supp. IV).

favor of a private individual against a state government found to have subjected that person to employment discrimination on the basis of "race, color, religion, sex, or national origin." The Court also stated that "[t]here is no dispute that in enacting the 1972 Amendments to Title VII to extend coverage to the States as employers, Congress exercised its power under § 5 of the Fourteenth Amendment." Id. at 453 n.9, 96 S.Ct. at 2670 n.9. Therefore, Congress abrogated the state's sovereign immunity as it relates to Title VII actions. Accordingly, the Eleventh Amendment does not bar Plaintiff from receiving monetary damages on his Title VII race discrimination claims should he prevail.

> B. **Plainitff's Claims of Disparate Treatment due to Race under Title VII**

"Whether an employer intentionally discriminated against an employee... is a question of fact, which may be proved either through direct or circumstantial evidence." *EEOC v. Joe's Stone Crab*, 296, F.3d 1265, 1272 (11th Cir. 2002). Defendant asserts that, because Plaintiff cannot present direct evidence to establish a prima facie case to show that the complained of unlawful employment practices have taken place, Plaintiff must prove his case "through circumstantial evidence, using the familiar burden-shifting framework established in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973)." *Id*.

In order for the Plaintiff to create a rebuttable presumption of discrimination by proving a prima facie case of discrimination, he must show that: (1) he is a

member of a protected class; (2) he was subjected to an adverse employment action; (3) similarly situated individuals outside the protected class were treated more favorably; and (4) he was qualified for the job. *Holifield v. Reno*, 115 F.3d 1555, 1561 (11th Cir. 1997).

Once the plaintiff establishes a prima facie case, the burden effectively shifts to the Defendant, who must articulate a legitimate, non-discriminatory reason for the challenged employment action. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S 113, 142 (2000). Once the presumption is rebutted, the employer is entitled to summary judgment unless the plaintiff proffers evidence from which a reasonable fact-finder could conclude that the reason articulated by the defendant was mere pretext for discrimination. *Kelliher v. Veneman*, 313 F.3d 1270, 1275 (11th Cir. 2002).

Plaintiff bases his claim for discrimination on his transfer from his position within the Criminal Division in Bessemer, Alabama to the Birmingham Division Patrol, Center Point Area in Birmingham, Alabama and Plaintiff's subsequent assignment to the night shift. (Amend. Compl. ¶ 26).

Plaintiff is a member of a protected class; he is an African American[11]. Therefore, Plaintiff is able to satisfy the first prong of the *McDonnell Douglas* test.

---

[11] For the purpose of evaluating Plaintiff's claims as to the *McDonnell Douglas* prima facie case test, it should be noted that Defendant Hale stipulated that Plaintiff is an African American, thereby satisfying the first requirement of belonging to a protected class. (Ans. of Def. to Amend. Compl. ¶ 9). Accordingly, the first prong of this test will be assumed as accepted throughout this opinion.

Plaintiff then asserts that the transfer and the placement on the night shift represented adverse employment actions. (Amend. Compl. ¶ 26).  Plaintiff further claims he was injured because it is "embarrassing for a senior officer with the time and length of service that [the Plaintiff] had to be placed on a night shift. Generally, the night shift, which was and still is the less desirable shift, was given to less senior officers." (Ex. 1, Pl.'s Resp. to Interrogs. & Req. Produc., ¶ 15).

Defendant claims that this transfer cannot be an adverse employment action due to the fact that this transfer resulted in neither a demotion nor a decrease in rank. (Lindon Aff. ¶ 4).  Further, Defendant asserts that having to work a night shift does not constitute a tangible loss or significant alteration of the terms, conditions, or privileges of employment within the Sheriff's Office. (Ex. 14, Lindon Aff. ¶ 4).

In *Montgomery v. City of Birmingham*, 2000 WL 1608620 (N.D. Ala.), the Honorable William M. Acker for the Northern District of Alabama held that "the fact [a Plaintiff] may have been 'embarrassed' does not constitute adverse employment action.  An employee who claims to have suffered a 'bruised ego' does not present evidence of an adverse employment action." *Montgomery*, 2000 WL 1608620 at 4. This Court finds *Montgomery* persuasive in determining that embarrassment alone does not constitute an adverse employment action.

In *Davis v. Town of Lake Park, Florida*, 245 F.3d 1232 (11th Cir. 2001), the Eleventh Circuit established a standard for determining whether an employment action is adverse. The Court held that to prove adverse employment ation in a case under Title VII anti-discrimination clause, an employee must show a serious and material change in the terms, conditions, or privileges of employment. *Davis*, 245 F.3d at 1239. Moreover, the employee's subjective view of the significant and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstance. *Id.*

Further, the Defendant presents Deputy Chief Carl Johnson's unrebutted affidavit to prove that Plaintiff did not suffer an injury, but rather chose the night shift position willingly. Deputy Chief Johnson states in his deposition that Plaintiff was given the choice of "whichever shift he wanted." (Johnson Aff. ¶ 3). Johnson further stated that Plaintiff chose the night shift which would allow the Plaintiff to be able "to take care of his father and take him to the doctor during the day." (Johnson Aff. ¶ 3). This evidence clearly disputes Plaintiff's claims that he was adversely impacted by the transfer at issue and his subsequent placement on the night shift. Plaintiff's language in his complaint stating that he "was required to work the night shift, which was a far less desirable work schedule," is contradicted by Deputy Chief Johnson's affidavit. However, a mere allegation in a pleading is not sufficient, on summary judgment, to refute sworn affidavit

testimony. *See, Sweet v. Childs*, 507 F.2d 675, 679 (5th Cir. 1975) (at the summary judgment stage, the opposing party may not simply rely on the contrary allegations of his complaint). Thus, Defendant is entitled to summary judgment as to these claims.

Even assuming that Plaintiff <u>was</u> required to take on this night shift, he neither suffered a decrease in compensation nor rank. Further, the injury of embarrassment, though appreciable as being inconvenient and discomforting to Plaintiff, does not rise to the level of the Eleventh Circuit's standard of an adverse employment action. Consequently, Plaintiff has failed to establish the second prong of the *McDonnell Douglas* test and the Defendant is entitled to summary judgment.

Further assuming that Plaintiff's claim of embarrassment due to the fact that he was placed on the night shift despite his seniority arises to the level of an adverse employment action, Plaintiff must prove that a member of a non-protected class was treated more favorably than the Plaintiff. At the time of Plaintiff's transfer to the Birmingham Patrol Division on January 22, 2003, three other white individuals - (1) Lieutenant Ed McGuffie (a white male); (2) Lieutenant Mike Ozley (a white male); and (3) Lieutenant Marsha Allen (a white female) - were also reassigned to the Patrol Division. (Ex. 1, Pl.'s Resp. to Interrogs. & Req. Produc. ¶ 8). Regarding the transfer itself, Plaintiff was transferred, along with

three other white Lieutenants, to the Birmingham Patrol Division under the supervision of Chief Deputy Johnson. This fact alone shows that Plaintiff cannot prove he was treated less favorably than similarly situated members of a non-protected class.[12] Consequently, Plaintiff fails the third prong of the test and Defendant is entitled to summary judgment.

Since Plaintiff's qualifications have never been brought into question regarding this action and the Defendant stipulated in his motion for summary judgment that Plaintiff "was qualified for his job at the time of the transfer," the fourth prong of the test is assumed to be satisfied. (Def.'s mot. for sum. judg. 9).

Plaintiff failed to establish that he was negatively impacted by an adverse employment action, and failed to prove that similarly situated members of a non-protected class have received more favorable treatment than Plaintiff. Consequently, the Plaintiff has not established the prima facie case for discrimination based on race using the *McDonnell Douglas* framework. Therefore, Defendant's motion for summary judgment is due to be **GRANTED** as to Plaintiff's Title VII claim.[13]

---

[12] Upon reassignment to the Birmingham Patrol Division, Lieutenant McGuffie was assigned to the day shift, Lieutenant Ozley received the evening shift, Lieutenant Allen was assigned to the relief shift and Plaintiff was assigned to the night shift. (Ex. 1, Pl.'s Resp. Interrogs. & Req. Produc., ¶ 8). However, because working the night shift resulted in no loss of compensation or rank, and Plaintiff claims embarrassment as his sole injury resulting from working the night shift which the Eleventh Circuit does not acknowledge as an adverse action, Plaintiff cannot show that he was treated less favorably than other similarly situated members of a non-protected class.

[13] Defendant claims that Plaintiff is unable to recover backpay damages due to the fact that Plaintiff's transfer to the Birmingham Patrol Division in the Center Point area represented a

## V. Conclusion

Although Eleventh Amendment Immunity does not preclude Plaintiff from seeking monetary relief claims under Title VII, for the reasons set forth above, the Defendant's motion for summary judgment is due to be **GRANTED** as to all of Plaintiff's Title VII claims.

**DONE** and **ORDERED** this 7th day of July, 2006.

*/s/ Virginia Emerson Hopkins*
**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

lateral transfer, not amounting to an adverse action, and further, that Plaintiff voluntarily retired from his position. (Def.'s Mot. for. Sum Judg. 7; Amend. Compl. ¶ 25). Due to the fact that Plaintiff was unable to establish a prima facie case for discrimination based on race as to any Title VII claim raised, Defendant's argument as to this claim is moot.